# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE
## CIVIL ACTION NO. 3:14CV-P30-S

JOHN STOKLEY                                                                                          PLAINTIFFS

v.

DISMAS CHARITIES, INC. *et al.*                                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff John Stokley filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on initial review pursuant to 28 U.S.C. § 1915A. Upon review, the Court will allow some of Plaintiff's claims to continue for further development and dismiss the remaining claims.

## I.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* §§ 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

## II.

Plaintiff currently is a convicted inmate at the Todd County Detention Center.  His complaint concerns his previous housing at Dismas Charities St. Ann ("St. Ann"), a half-way house, where he states he was transferred by the Kentucky Parole Board to participate in a drug and alcohol treatment program.  He maintains that he was required to complete the program to obtain parole.  He sues Dismas Charities, Inc. ("Dismas") and the following employees of St. Ann:  Mark Meredith, the Director; Michael Edwards,[1] an Assistant Director; Stacy Coleman, a case worker; and Adam Nichols, a parole officer.  He sues each Defendant in his or her official and individual capacities.  Plaintiff makes a wide variety of claims.  The Court will summarize Plaintiff's factual allegations below.  As relief, he requests monetary damages in the form of medical expenses and lost wages, as well as punitive damages.

## III.

Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States.  A

---

[1]Plaintiff identifies Defendant Michael Edwards in the complaint caption.  In the body of the complaint, he refers to Carl Edwards.  For the purposes of initial review, the Court considers these to be the same person and refers to him herein as Defendant Edwards.

claim under § 1983 must therefore allege two elements: (1) the deprivation of federal statutory

or constitutional rights by (2) a person acting under color of state law. *West v. Atkins*, 487 U.S.

42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Absent either

element, no § 1983 claim exists. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

 The Sixth Circuit has held that "[i]t is clear that a private entity which contracts with the

state to perform a traditional state function such as providing medical services to prison inmates

may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d

1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). For the purposes of

initial review, the Court will presume that Dismas has contracted with the state to provide a drug

and alcohol treatment program for inmates/parolees. The Court will therefore presume for the

purposes of initial review that Defendants are state actors. However, by doing so, the Court

makes no judgment on the ultimate outcome on this issue.

**A. Official-capacity claims**

 Plaintiff sues all Defendants in their official capacities. "Official-capacity suits . . .

'generally represent [] another way of pleading an action against an entity of which an officer is

an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City

Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official-capacity claims against

Defendants Meredith, Edwards, Coleman, and Nichols are, therefore, actually claims against

their employer, Dismas. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that

civil rights suit against county clerk of courts in his official capacity was equivalent of suing

clerk's employer, the county).

 The same analysis that applies to a § 1983 claim against a municipality applies to a

§ 1983 claim against a private entity like Dismas. *See Street v. Corr. Corp. of Am.*, 102 F.3d

810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality can only be held responsible for a constitutional deprivation if there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). The plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). Thus, liability of a contracted private entity must be based on a policy or custom of the entity. *Street v. Corr. Corp. of Am.*, 102 F.3d at 818; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights.").

Upon review of Plaintiff's factual allegations, the Court finds that Plaintiff has not alleged that any Defendant acted pursuant to a municipal policy or custom with respect to any of his claims with the exception of one claim—his claim that he was required to participate in a drug and alcohol treatment program that endorses a religion in violation of the First Amendment.

With regard to the other alleged violations of Plaintiff's rights, the complaint appears to allege isolated occurrences affecting only him. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). Accordingly, Plaintiff's official-capacity claims against all Defendants and his claims against Dismas will be dismissed for failure to state a claim upon which relief may be granted, with the exception of his First Amendment claim as discussed below.

**B.       Individual-capacity claims**

*Religion*

Plaintiff first alleges that Defendants Dismas, Meredith, Edwards, and Coleman violated his First Amendment right to religious freedom because he was required to participate in a drug and alcohol treatment program which "endorsed and imposed a religion on it's residents." According to the complaint, "[t]he program's facility is owned and operated by a Catholic organization. The program was religiously oriented and I was forced to participate in several religious activities by program staff (defendants)." Plaintiff states that he was required to attend meetings in a chapel, participate in a group prayer, and attend classes taught by a church pastor. He also was required to participate in AA's [Alcohol Anonymous's] 12 step program, which is "spiritual in nature." Plaintiff contends that participation in this program was a requirement to obtain parole.

The First Amendment of the United States Constitution states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Upon initial screening, and construing Plaintiff's factual allegations as true, as the Court is required to do at this stage, the Court will allow Plaintiff's individual and official-

capacity claims against Defendants Dismas, Meredith, Edwards, and Coleman based on his allegations that he was required to attend a drug and alcohol treatment program that endorses a religion in violation of the First Amendment's Establishment Clause to continue for further development. In doing so, the Court passes no judgment on the ultimate outcome of this claim.

***Food poisoning***

Plaintiff next states that Defendants Dismas, Meredith, and Edwards violated the Eighth Amendment's Cruel and Unusual Punishments Clause "when they failed to provide food that was safe for human consumption." Plaintiff maintains that "[t]heir failure to insure food safety resulted in my contracting food poisoning. The defendants failed to take proper measures to ensure safe practices in the preparation, handling and serving of food provided at St. Ann facility." He alleges, "They knowingly allowed the food to be prepared and served by the residents of the program who lacked proper training, certification or adequate supervision." According to the complaint, Plaintiff "consumed chicken provided by the facility for dinner. The chicken appeared undercooked and did not seem very warm." He felt sick throughout the night, and the following day he was given permission to go to the emergency room "under the condition I did not express to other residents the food may be the blame of my symptoms." Plaintiff was examined at the hospital and was told that food poisoning was the most likely cause of his symptoms. He was treated with IV fluids and medications for vomiting and was given a prescription for Phenergan. His symptoms lasted 3-4 days. Plaintiff reports that the total cost of his treatment was $2,924.18.

The Eighth Amendment's Cruel and Unusual Punishments Clause places restraints on prison officials, directing that they "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S.

517, 526-527 (1984)).  Prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ."  *Id.*  However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  A viable Eighth Amendment claim must satisfy both an objective component and a subjective component.  *Farmer v. Brennan*, 511 U.S. at 834; *Street v. Corr. Corp. of Am.*, 102 F.3d at 814.  The objective component requires that the deprivation be "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Hudson v. McMillian*, 503 U.S. 1 (1992).  An inmate must show that he was deprived of "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety.  *Wilson v. Seiter*, 501 U.S. at 302-03.

"A single incident of food poisoning or finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected."  *Green v. Atkinson*, 623 F.3d 278, 280-81 (5th Cir. 2010).  *See also Tucker v. Metts*, No. 2:10-1316, 2011 U.S. Dist. LEXIS 30248, at *4 (D.S.C. Feb. 17, 2011) ("[T]he law is clear that a single incidence of unintended food poisoning is not a constitutional violation."); *Beene v. Rasseki*, No. 3:10-0285, 2010 U.S. Dist. LEXIS 52379, at *5, *20 (M.D. Tenn. May 27, 2010) (prisoner's claim that he was served spoiled milk not sufficient to state Eighth Amendment claim).

In the instant case, accepting the allegations as true, the complaint alleges a one-time incidence of food poisoning for which Plaintiff received prompt medical attention.  As such, the

allegations are insufficient to state a deliberate-indifference claim under the Eighth Amendment, and the claim will be dismissed for failure to state a claim upon which relief may be granted.

***Retaliation***

Plaintiff also alleges that Defendants Meredith, Edwards, and Coleman "committed several acts of cruelty as retaliation for seeking legal counsel and pursuing the courts, and as tools to impede those actions." He states that Defendants Dismas and Nichols "unjustly terminat[ed] me from the SAP program as retaliation from the other defendants, effecting my return to prison."

According to the complaint, after Plaintiff and two other residents who had also had food poisoning contacted attorneys to file suit against Dismas for the food poisoning incident, they were "told these actions would not be tolerated and if we continued we would be removed from the program and sent back to prison." Plaintiff maintains that on February 5, 2013, he "was placed under arrest by Adam Nichols. . . . I asked what the reason was for my termination and Mr. Meredith said they were tired of dealing with me." He states that another resident also was placed under arrest that day and that he and the other inmate were "the only two residents who refused to write release statements concerning the issues with food safety at the facility, and we had contacted attorneys concerning the incident." In addition to termination from the program, Plaintiff states that he was retaliated against in other forms, including constant harassment; his privileges, such as phone calls, visitation, and care packages, were suspended; he was "repeatedly punished for little or no just cause"; and his outgoing mail was stolen on at least one occasion.

Plaintiff maintains that the alleged retaliation violated the Eighth Amendment. However, retaliation for the exercise of a constitutional right is a violation of the First Amendment

actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to state a retaliation claim, a plaintiff must show that: (1) he engaged in constitutionally protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) there is a causal connection between elements (1) and (2), meaning that the adverse action was motivated at least in part by the plaintiff's protected conduct. *Id.*

The Court finds that filing a lawsuit is protected conduct. However, not every adverse action is constitutionally cognizable. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X v. Blatter*, 175 F.3d at 396. "There is, of course a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. at 674. As stated, the adverse action necessary to state a constitutional violation must be such that it would "'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

Upon initial review, the Court finds that Plaintiff's allegations that Defendants retaliated against by terminating him from the St. Ann program and confiscating his mail and sending it to Blackburn Correctional Center[2] in retaliation for seeking an attorney and refusing to sign a release in connection with his alleged food poisoning survive initial review. The remaining actions that Plaintiff alleges were taken against him are insufficient to state a retaliation claim. Therefore, the Court will allow Plaintiff's retaliation claim against Defendants Meredith, Edwards, Coleman, and Nichols in their individual capacities as stated above to go forward. The Court passes no judgment on the ultimate merit of these claims.

---

[2] Plaintiff's claim concerning the confiscation of his mail is discussed in more detail below.

### *Denial of access to courts*

Plaintiff further alleges that the above facts support a denial-of-access-to-courts claim. In order to state a claim for denial of access to the courts, however, a plaintiff must show actual injury. *Thaddeus-X v. Blatter*, 175 F.3d at 394. "An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "'Meaningful access to the courts is the touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* (internal citations omitted). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

Here, Plaintiff has not alleged that he was actually prevented from meaningfully accessing the courts. Indeed, he has filed the instant action asserting the claims that he alleges were being thwarted. As such, he has not set forth a constitutional claim for denial of access to the courts, and the claim will be dismissed for failure to state a claim.

### *Disclosure of medical information and KET documentary*

Plaintiff next claims that Defendants Meredith and Edwards violated "HIPPA" and the Eighth Amendment "by disclosing private medical information and making inquires and comments concerning private medical facts, in the presence of other residents . . . ." He reports that the questions concerned the symptoms of his food poisoning. Plaintiff states, "Questions were asked about frequency and consistency of my bowel movements and wether or not stool

samples were collected from us." He believes the questions were meant to demean and embarrass him. He also alleges that Defendants Dismas, Meredith, and Edwards violated "HIPPA medical privacy rights by allowing [Kentucky Educational Television] KET documentary film crews access to film at this private treatment facility, even after I refused to sign a release to be filmed."

Title II of HIPAA, the Health Insurance Portability and Accountability Act of 1996, codified at 42 U.S.C. § 1320a *et seq.*, was created to protect against the unauthorized disclosure of health records and information. *Gratton v. United Parcel Serv., Inc.*, No. CV 07-3071, 2008 U.S. Dist. LEXIS 108700, at *4 (E.D.N.Y. Nov. 14, 2008). However, only the Secretary of the Department of Health and Human Services may file suit to enforce its provisions. 42 U.S.C. § 1320d-5(d); *Sneed v. Pan Am. Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010). Private citizens have no standing to sue a covered entity for a violation of HIPAA. *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) (holding that HIPAA cannot be enforced through either an implied private right of action or through § 1983); *see also Carpenter v. Phillips*, 419 F. App'x 658, 658 (7th Cir. 2011); *Siegler v. Ohio State Univ.*, No. 2:11-cv-170, 2011 U.S. Dist. LEXIS 55389, at *8 (S.D. Ohio May 23, 2011). Accordingly, Plaintiff's claim under HIPAA will be dismissed for failure to state a claim.

To the extent that Plaintiff argues that the disclosure of his medical information is a violation of the Eighth Amendment, the Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. at 345-46. The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d

950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation

alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*,

452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth

Amendment is only concerned with "deprivations of essential food, medical care, or sanitation"

or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation

omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while

incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth

Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment

claim, he must show that he faced a sufficiently serious risk to his health or safety and that the

defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v.

Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. at 834). Under

this standard, the disclosure of Plaintiff's private medical information fails to state an Eighth

Amendment claims. *See Townsend v. Reaume*, No. 1:13-cv-729, 2013 U.S. Dist. LEXIS

103917, at *9 (W.D. Mich. July 25, 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

Further, while disclosure of an inmate's medical information may violate the Fourteenth

Amendment's right to informational privacy, the Sixth Circuit narrowly applies the right to

informational privacy "only to interests that implicate a fundamental liberty interest." *Bloch v.

Ribar*, 156 F.3d 673, 684 (6th Cir. 1998). The Sixth Circuit has limited such a violation to only

two instances: "(1) where the release of personal information could lead to bodily harm, [citing

*Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998)] and (2) where the

information released was of a 'sexual, personal, and humiliating nature.'" *Townsend*, 2013 U.S.

Dist. LEXIS 103917, at *11-12 (citing *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008);

*Bloch v. Ribar*, 156 F.3d at 684). The disclosure of Plaintiff's medical information concerning

the symptoms of his food poisoning does not meet either of these circumstances. *See Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) ("[U]nder our interpretation of privacy rights, we have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution."); *Townsend*, 2013 U.S. Dist. LEXIS 103917, at *14-15 ("[E]ven assuming arguendo that protecting a prisoner's HIV status is a 'fundamental interest,' it does not follow that protection of all medical and/or mental health information rises to the same level."); *cf. Bloch v. Ribar*, 156 F.3d at 684 (holding that the right to informational privacy was triggered by a press conference in which a sheriff released the "highly personal and extremely humiliating details" of the plaintiff's rape).

Therefore, Plaintiff's claims related to the disclosure of his medical information will be dismissed for failure to state a claim.

Moreover, with regard to Plaintiff's claim related to filming at St. Ann for a KET documentary, Plaintiff states, "Even after my refusal [to sign a consent form] the film crew was permitted to film residents and activities of the program." However, Plaintiff does not state that he himself was filmed for the documentary or any way in which he was injured by the filming of other residents. As such, he fails to state claim with regard to the allegations regarding the documentary filming, and the claim will be dismissed.

### Denial of medical care related to alleged food poisoning

Plaintiff states that Defendant Meredith and Edwards violated the Eighth Amendment when, after he returned from the emergency room after having food poisoning, he was not permitted to fill a prescription for nausea medication "for almost 48 hours after it had been issued by a doctor." With regard to prisoners' claims of denial of medical care, "'[d]eliberate

indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. at 104).

A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. at 837-47). Mere negligence will not suffice. *Farmer*, 511 U.S. at 835-36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment. *See Estelle*, 429 U.S. at 106. "'[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)).

Plaintiff fails to allege what detrimental effect resulted from the 48-hour delay in receiving the medication. *See Love v. Growse*, No. 5: 08-303-KSF, 2008 U.S. Dist. LEXIS 79966, *4 (E.D. Ky. Oct. 3, 2008) ("While such a delay is unfortunate and caused the Plaintiff

14

some discomfort, it is insufficient to establish a violation of his constitutional rights."). Moreover, based on the facts alleged by Plaintiff, he received prompt medical attention for the alleged food poisoning, including IV medication in the emergency room. Therefore, Plaintiff has failed to state an Eighth Amendment claim based on the 48-hour delay in receiving the nausea medication.

### Denial of mental health treatment

Plaintiff also alleges that between January 26, 2013, and January 30, 2013, he made multiple requests for medical or mental health treatment for anxiety attacks and that Defendants Meredith, Edwards, and Nichols denied his requests. He states that when he informed Defendant Meredith of his anxiety Meredith told him that his "requests had been ignored because I had brought this entire situation on myself; that the stress and fear causing my attacks were the consequences of my actions." Plaintiff states that on February 5, 2013, he "began to experience trouble breathing, chest pressure, irregular heartbeat and tingling sensation in my upper body and extremities." According to the complaint, he alerted staff and was rushed to the emergency room because staff was concerned that he was having a heart attack. After undergoing tests, Plaintiff was informed that it was "actually heart palpatations from an extreme anxiety attack (hospital's diagnosis)." He was issued a prescription medication for anxiety. He reports that the cost of the hospital treatment was $8,274.23. He states that he still experiences "lasting effects of anxiety"; still experiences panic attacks although not as frequent; and still receives treatment for panic disorder which he contends started because of Defendants' actions.

Upon review, and construing the allegations as true, the Court will allow Plaintiff's individual-capacity claims against Defendants Meredith, Edwards, and Nichols for denial of

mental health treatment to continue past initial screening.  In allowing the claims to proceed, the

Court passes no judgment on its ultimate merit.

### Handwriting punishment

In a section in which Plaintiff alleges violations of the Eighth Amendment's Cruel and

Unusual Punishments Clause, Plaintiff states that on two separate occasions occurring for

multiple days each time he was assigned to copy passages from 7:30 am to 9:00 pm with a 30

minute break for lunch and dinner.  He states as follows:

> This punishment technique is known as 'tight house' and can only be
> assigned by the director, Mark Meredith.  The first time I was assigned
> this punishment detail it was for an incident that included the entire house.
> At this time I explained to Carl Edwards that I have arthritis in my hands
> and suffer extreme pain when I write for extended periods.  I provided a
> memo from the doctor who had diagnosed and treated me, before coming
> to prison in 2012.  Mr. Edwards said I would not be excused from the
> assignment and would just have to take some asprin for the pain.

Upon review, the Court will allow Plaintiff's Eighth Amendment claim against Defendant

Meredith in his individual capacity concerning the handwriting punishment to proceed for further

development.  In doing so, the Court passes no judgment on the claim's ultimate merit.

### Intentional infliction of emotional distress

Plaintiff next claims that between January 13, 2013, and February 5, 2013, Defendants

Meredith, Edwards, and Coleman "inflicted mental and emotional injury through a lasting

campaign of repeated harassment, wanton acts, unjustified punishments, withholding of medical

care and other retaliatory acts which caused infliction of emotional distress so servere it

manifested into physical symptoms (servere panic/anxiety attacks) which require(d) treatment

and have caused lasting effects."  He maintains, "The day before my termination I was rushed to

the hospital when PM staff thought I was having a heart attack which was actually heart

palpatations from an extreme anxiety attach (Hospital's diagnosis)."  He states that he still

experiences "lasting effect of anxiety from the mental/emotional injuries inflicted by defendants." He reports that he still has anxiety attacks, although not as frequent. He states that he still receives treatment for anxiety.

Under Kentucky law, to establish a *prima facie* case of intentional infliction of emotional distress:

> 1) the wrongdoer's conduct must be intentional or reckless;
> 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
> 3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
> 4) the emotional distress must be severe.

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004). Upon initial screening, the Court will allow Plaintiff's state-law claims of intentional infliction of emotional distress to proceed against Defendants Meredith, Edwards, and Coleman in their individual capacities. Once again, the Court passes no judgment on the claims' ultimate outcome.

### *Loss of property*

Plaintiff next claims that Defendant Meredith "failed to provide a reasonable amount of protection for my personal property while it was under his care at the St. Ann facility." Plaintiff states that on the date of his arrest and departure from St. Ann, February 5, 2013, he left his wallet containing an $80.00 money order on his night stand. He was not allowed to secure the wallet after his arrest and the money order was stolen. He also alleges that his hair clippers and beard trimmer and a radio were stolen. He reports that his mother contacted Defendant Meredith about the missing items to no avail.

Plaintiff's claim concerning the loss of his personal property does not give rise to a constitutional violation actionable under § 1983. The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of

personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *Hudson v. Palmer,* 468 U.S. at 533; *Parratt v. Taylor*, 451 U.S. 527 (1981) (*rev'd on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986)). In order to assert a claim for deprivation of property without due process pursuant to § 1983, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *Parratt,* 451 U.S. at 543-44. The law of this Circuit is in accord. For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id.* at 1066. The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).

Thus, Plaintiff's claim concerning his lost or stolen property will be dismissed for failure to state a claim upon which relief may be granted.

*Confiscated mail and prison disciplinary action*

Plaintiff contends that Defendants Dismas and Meredith "had my outgoing mail confiscated in violation of my constitutional rights, State and Federal laws. This stolen mail was then opened and read, then shared with other non privileged parties outside of the facility." He states that a letter addressed to a person in Florida was confiscated, opened, and read. He said the letter was "confiscated as retaliation or an attempt to keep my situation at the facility from public knowledge to prevent further issues or actions against Dismas, Inc." He represents that several months later while he was incarcerated at Blackburn Correctional Center ("BCC") he was presented with the letter he had written while at St. Ann. He states, "Statements in this letter concerning my time spent at BCC before making parole, were used against me and I was issued

6 disciplinary reports, even after explaining the statements in the letter were false and were contrary to available facts." He maintains that he tried to explain that the letter concerned his previous incarceration at BCC and that the letter was written while he was a parolee and therefore outside the Department of Corrections and not subject to inspection without a warrant. He was still convicted. Plaintiff states that he was assigned to disciplinary segregation for 90 days; "lost 600 days good time which extends my prison term almost 2 years"; lost the ability to earn future meritorious good time credits; "caused my transfer to a high security prison with fewer privileges, [and] excluded me from educational or rehabilitative programs which also reward good time credit'; and reduced his chance at making parole in the future. Plaintiff states that he also incurred the cost of filing a petition for declaration of rights "to challenge the disciplinary reports which I was convicted of (still pending)."

The Court has allowed Plaintiff's retaliation claim based on his allegations that his mail was confiscated in retaliation for contacting attorneys and refusing to sign a release in connection with his alleged food poisoning to continue. However, to the extent that Plaintiff challenges the prison disciplinary actions taken against them, the claims fail. In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), to prison administrative proceedings, holding that if an inmate's claim challenging prison disciplinary proceedings would "necessarily imply the invalidity of the punishment imposed[,]" the claim is not cognizable in a civil action under § 1983. *Edwards v. Balisok*, 520 U.S. at 648. Furthermore, in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court reemphasized that "a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit

(state conduct leading to conviction or internal prison proceedings)--if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id*. at 81-82.

Plaintiff's claims concerning his prison disciplinary actions would necessarily imply the invalidity of his confinement and cannot be stated under § 1983. Therefore, Plaintiff's claims concerning the disciplinary actions taken against him will be dismissed for failure to state claim.

***Failure to take action***

Plaintiff next contends that Defendant Nichols violated his Eighth Amendment rights when he "was repeatedly informed of actions against me from program staff, but failed to take any steps to stop them." He also states that Defendant Nichols violated his rights when he denied Plaintiff's request for transfer due to conflicts he had with the St. Ann staff and placed him under arrest. He maintains that he informed Defendant Nichols of his needs for medical and mental health care and that Nichols did not assist him in obtaining the requested care.

The Court has allowed Plaintiff's claim against Nichols for denial of mental health treatment to proceed. With regard to Plaintiff's claims that Defendant Nichols failed to take action, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Therefore, any of Plaintiff's claims based on Defendant Nichol's mere failure to act do not state a claim and will be dismissed.

## IV.

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the following claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted:

a)  All official-capacity claims and all claims against Dismas with the exception of Plaintiff's First Amendment claim as described above;

b)  Plaintiff's food poisoning claim;

c)  his denial-of-access-to-courts claim;

d)  his claim concerning disclosure of his medical information and claim based on a KET documentary;

e)  his loss-of-property claim;

f)  his claim based on his prison disciplinary action; and

g) his claim based on Defendant Nichols's failure to act.

The Court will enter a separate Scheduling Order governing the claims that have been permitted to proceed.

Date:    July 25, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:      Plaintiff, *pro se*
         Defendants
4411.010